UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FLYING J, INC., | Case No. 08-c-110 |
| Plaintiff, | |
| v. | |
| J.B. VAN HOLLEN, ATTORNEY GENERAL OF WISCONSIN, ROD NILSESTUEN, SECRETARY OF THE WISCONSIN DEPARTMENT OF AGRICULTURE, TRADE AND CONSUMER PROTECTION, | **WISCONSIN PETROLEUM MARKETERS & CONVENIENCE STORE ASSOCIATION'S MOTION TO INTERVENE** |
| Defendants. | |

**MOTION**

Proposed Intervenor Wisconsin Petroleum Marketers & Convenience Store Association ("WPMCA" or "Intervenor"), by its undersigned counsel, hereby moves to intervene in this action as party defendant pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure. Consistent with Rule 24(c), attached as Exhibit A are copies of a Motion to Reconsider and a Motion to Stay Pending Appeal, which are being filed conditioned on this Court granting this Motion to Intervene.[1]

---

[1] Intervenor will stand on the answer filed by Defendants, unless this Court directs that a separate pleading be filed.

## OVERVIEW

WPMCA is an organization consisting of more than 500 independent businesses. (Declaration of Matthew Hauser ("Hauser Dec.") at ¶ 1.) As a group, members employ more than 10,000 people, operate more than 2,000 stations and stores and account for more than one-half the entire volume of motor fuel and nearly all the home heating oil sold in Wisconsin. (*Id.* at ¶ 2.) In addition to convenience stores, truck stops and service stations, members own and operate related businesses such as rapid oil change facilities, restaurants, car washes and card lock fueling outlets. (*Id.*) Until now, a number of WPMCA's members have been operating under a business model in effect since the Unfair Sales Act was passed some 60 years ago. (*Id.* at ¶ 3.)

For obvious reasons, WPMCA and its members are directly affected by this Court's February 11, 2009 decision and order, enjoining the Attorney General and the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP") from enforcing the motor vehicle provisions of the Unfair Sales Act.[2] As written, the injunction effectively precludes Wisconsin's principal enforcement officials – the Attorney General and the Wisconsin Department of Justice – from enforcing ALL prohibitions under the Unfair Sales Act with respect to motor vehicle fuel at the retail and wholesale levels. This injunction will have

---

[2] WPMCA has associational standing to intervene in this action on behalf of its members. *See, e.g., Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964 (7th Cir. 2005) (holding that doctrine of associational standing applies where members of the association have standing in their own right; the interests the association is representing are germane to the association's purpose; and the relief sought does not require the participation of the individual members). Should the Court have any question regarding WPMCA's standing, a number of its members are prepared to intervene individually, including a number of the members who have submitted declarations in conjunction with this motion.

2

catastrophic effects on the ability of many members of WPMCA to stay in the motor vehicle fuel business or to do so while maintaining a reasonable profit. (*Id.* at ¶¶ 4-5.)

First, the few additional cents the markup law actually represents to the small, independent motor fuel retailers in this state can be the make or break point, particularly in this harsh economic environment. (*Id.* ¶ 6.; Declaration of Randy Meffert ("Meffert Dec.") at ¶ 3; Declaration of John Baltus ("Baltus Dec.") at ¶ 7.) Second, single location convenience store retailers simply have no ability to follow the business model of larger competitors, whether it be (1) enterprises like Flying J who are fully integrated from refinery, pipeline, wholesale to retail; or (2) larger grocery and other retail outlets who can buy in bulk AND use gasoline as a loss leader to attract customers into their stores. (*Id.* ¶ 5; Baltus Dec. at ¶¶ 4-7; Declaration of Linda Kaplan ("Kaplan Dec.") at ¶ 8.)

If the decision and order stands, many members of WPMCA face the risk that their doors will be permanently closed. (Hauser Dec. at ¶ 6; Declarations of: John Baltus, Robert Buhler, Jim Goetz, Matthew Hauser, Linda Kaplan, Randy Meffert and Denise Thomas.) In turn, consumers will ultimately be left with fewer options with respect to the purchase of motor vehicle fuel, the precise result the Unfair Sales Act was implemented to prevent. (Hauser Dec. at ¶ 6.) Nor is there a way for those harmed by the injunction to recover these losses later – assuming a retailer even survives until it is reversed or, at minimum, narrowed in scope – since the Court, the State and Flying J are all immune from the impacts of a permanent injunction once granted. *See, e.g. TY, Inc. v. Publ'n Int'l*, 292 F.3d 512, 516 (7th Cir. 2002) (explaining that "an injunction is likely to inflict irreparable harm on the defendant; that is, harm that a reversal will not cure").

To protect the interests of Intervenor and consumers, and to ensure that their interests are taken into account at a time when providing the relief will not be futile, Intervenor seeks to participate as co-defendants with the Attorney General and the Secretary of DATCP. Granting this motion comports with the requirements of Fed. R. Civ. P. 24(a) and, in the alternative, (b). Permitting intervention advances the interests of justice because it is the most efficient process by which to resolve the issues affecting Intervenor, as well as the existing parties.

## ARGUMENT

### I. WPMCA IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO RULE 24(A).

1. WPMCA is entitled to intervene in this action as a matter of right pursuant to Federal Rule of Civil Procedure Rule 24(a). Rule 24(a)(2) mandates intervention as a matter of right for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

2. Under Rule 24(a), a party moving to intervene must show that: (1) the motion is timely brought, (2) the intervenor has an interest relating to the subject of the pending action; (3) there is potential that the intervenor's interests will be impaired by disposition of the action in their absence; and (4) the intervenor's interests are not adequately represented by existing parties. *See Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694 (7th Cir. 2003); *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994); *Allen-Bradley Co. v. Kollmorgen Corp.*, 199 F.R.D. 316, 217 (E.D. Wis. 2001). Each of these elements is present here.

4

## THE MOTION TO INTERVENE IS TIMELY

3. "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Utah Ass'n. of Counties v. Clinton*, 255 F.3d 1246, 1250 (2001) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). Given the unprecedented sweeping scope of this Court's injunction, the stakes for Intervenor and its members, the larger public interests, and the lack of prejudice to the present parties, this motion is timely.

4. WPMCA brings its motion just ten (10) business days after the Court entered its injunction preventing the Attorney General and DATCP from enforcing the motor vehicle provisions of the Unfair Sales Act. As such, WPMCA did not delay in intervening once it learned of the Court's decision and the catastrophic affects the decision will likely have on the ability of independent retailers to stay in the motor vehicle fuel business and, likewise, on the ability of consumers to purchase motor vehicle fuel from a variety of entity types.

5. Flying J may argue that the motion to intervene is not timely because the case has been pending 13 months before the motion was filed. Any such argument should be rejected because it misconstrues the timeliness requirement. The timeliness inquiry judges the "speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties," not the amount of time that has passed from when the case was filed to when intervention was sought. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

6. As the Seventh Circuit has explained, "we do not necessarily put potential intervenors on the clock at the moment the suit is filed or even at the time they learn of its

5

existence. Rather, we determine timeliness from the time the potential intervenors learn that their interest might be impaired." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (citation omitted). Thus, a motion to intervene may be timely long after the intervener discovers the action if the intervener does not discover the threat to its interests until much later. *Scherer v. Opportunities Industrialization Ctr.*, Case No. 05-C-261 (E. D. Wis.. 2006) (citation omitted).

7. Here, WPMCA believed its interests and the interests of its members were being addressed through Defendants' arguments that the Unfair Sales Act is constitutional, and is not preempted by the Sherman Act, 15 U.S.C. § 1, until the Court's decision and order. Given those arguments, the long-standing nature of the Unfair Sales Act, binding Seventh Circuit precedent, and the rejection of similar attacks on the Act in the past, Intervenor believed that Defendants' ability to enforce the Unfair Sales Act as it relates to motor vehicle fuel, as a whole, would be decided against Flying J, much less that the Court would immediately enjoin the Attorney General and DATCP from enforcing ALL prohibitions under the Unfair Sales Act with respect to motor vehicle fuel.

8. Even more to the point, WPMCA only learned *today* that the AG and DATCP decided not to move to reconsider *or* to seek a stay of the injunction pending appeal.

9. Moreover, no existing party is prejudiced by the timing of this motion to intervene. The issue to be assessed by the court is the prejudice, if any, "caused by the intervenors' delay – <u>not by the intervention itself</u>." *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998) (emphasis added).

10. There is no prejudice to Flying J by the timing of WPMCA's motion. The existing defendants have the same right to move for reconsideration of the Court's decision and

6

order, stay and/or appeal the Court's decision and order. Thus, there is no prejudice to Flying J by the Court allowing Intervenor to do so.

## II. WPMCA HAS AN INTEREST RELATING TO THE SUBJECT OF THE PENDING ACTION, AND THE INTEREST MAY BE IMPAIRED BY DISPOSITION OF THIS ACTION IN ITS ABSENCE

11. WPMCA satisfies both the second and third requirements for intervention as of right. A party's interest is sufficient to justify intervention if it is "direct, significant, legally protectable." *Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). As stated in substantial detail by supporting declarations filed with this motion, the Court's decision and order precluding the Attorney General and Wisconsin Department of Justice from enforcing all prohibitions under the Unfair Sales Act will have potentially catastrophic effects on the ability of some members of WPMCA to stay in the motor vehicle fuel business and cause significant monetary losses to other members. As such, WPMCA has an interest relating to the pending action that may be impaired by disposition of this action in its absence.

## III. WPMCA'S INTERESTS ARE NOT ADEQUATELY PROTECTED BY EXISTING PARTIES

12. Finally, WPMCA also satisfies the fourth requirement for intervention as of right – that its interests are not adequately protected by existing parties. In its decision and order, the Court recognized as much, noting that "a private party necessarily has different motives for the pursuit and allocation of resources to litigation than does a government entity." (Feb. 11, 2009 Decision and Order, Dkt. 50, p. 7.)

13. Moreover, numerous courts have recognized that because government entities or agencies owe an equal duty to all individuals/businesses, they cannot adequately represent private interests. *See Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381 (10th Cir. 1977) (holding that a government agency cannot adequately represent private interests in litigation);

7

MADI_1826168.1

Case 2:08-cv-00110-RTR   Filed 02/25/09   Page 7 of 9   Document 52

*Planned Parenthood of Minn., Inc. v. Citizens for Comm. Action*, 558 F.2d 861 (8th Cir. 1977) (same); *Nader v. Ray*, 363 F. Supp. 946 (D.D.C. 1973) (same).

14. In any event, the AG's and DATCP's refusal to seek reconsideration or stay pending appeal underscores that Intervenor's interests are not being adequately protected.

**IV. IN THE ALTERNATIVE, WPMCA SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULE 24(B).**

15. Rule 24(b) provides for permissive intervention as long as a timely application is made and the "applicant's claim . . . and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). As part of this determination, the courts consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*; *see also Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991); *Peterson Builders, Inc. v. A.C. Hoyle Co.*, 163 F.R.D. 550, 552 (E.D. Wis. 1995).

16. As noted above, the motion to intervene is timely, as it has been filed just ten (10) business days after the Court's decision and order enjoining enforcement of the motor vehicle fuel provisions of the Unfair Sales Act and on the same day WPMCA was advised that the AG and DATCP would seek no further relief in this Court.

17. In addition, there are questions of law and fact in common with respect to the arguments the Attorney General and DATCP have previously made to this Court and those that Intervenor seeks to raise. This case has been centered on the motor vehicle fuel provisions of the Uniform Sales Act. That focus will not change should the Court grant the motion to intervene.

18. Moreover, no delay or prejudice to the existing parties will occur if the motion to intervene is granted. WPMCA seeks to participate in motions to reconsider and stay injunction that the existing defendants have a right to file in any event, or an appeal of the

8

decision and order that the existing parties would have a right to pursue in any event. As such, WPMCA's participation will not prejudice the rights of existing parties.

## CONCLUSION

WHEREFORE, WPMCA requests that the Court enter an order Granting their motion to intervene so that the parties may assert and protect their interests in establishing the constitutionality of the Uniform Sales Act.

DATED this 25th day of February, 2009.

FOLEY & LARDNER LLP


   /s/ Theresa A. Andre
William M. Conley (WBN 1009504)
Theresa A. Andre (WBN 1055433)
Matthew D. Lee (WBN 1061375)
*Attorneys for Proposed Intervenor*

Mailing Address:
FOLEY & LARDNER LLP
Post Office Box 1497
Madison, Wisconsin 53701-1497
(608) 257-5035
(608) 258-4258 (fax)