UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**FLYING J, Inc.,**

                Plaintiff,

                                              Case No. 08-C-110

    -vs-

**J.B. VAN HOLLEN, Attorney General of
Wisconsin, ROD NILSESTUEN, Secretary
of the Wisconsin Department of Agriculture,
Trade and Consumer Protection,**

                Defendants,

and

**WISCONSIN PETROLEUM MARKETERS
& CONVENIENCE STORE ASSOCIATION,**

                Proposed Intervenor.

---

## DECISION AND ORDER

---

On January 29, 2008, Flying J, Inc. ("Flying J") brought the instant lawsuit to enjoin the defendants, J.B. Van Hollen, Attorney General of Wisconsin, and Rod Nilsestuen, Secretary of the Wisconsin Department of Agriculture (collectively the "State"), from enforcing the motor vehicle fuel provisions of Wisconsin's Unfair Sales Act, Wis. Stat. § 100.30. In pertinent part, the Act forbids retailers from selling motor vehicle fuel below cost, which is based on the average posted terminal price plus a minimum markup of 9.18%. *See* Wis. Stat. §§ 100.30(2)1m.c; 100.30(2)(a); 100.30(3).

On February 11, 2009, upon consideration of cross-motions for summary judgment, the Court held that the Act's motor vehicle fuel provisions create an illegal restraint of trade

in violation of the Sherman Act, 15 U.S.C. § 1.  The Court also held that this illegal restraint did not meet the active supervision requirement for antitrust immunity under *Parker v. Brown*, 317 U.S. 341 (1943).  Accordingly, the Court issued an order declaring the motor vehicle fuel provisions of the Act unconstitutional.  The Court also enjoined the State from further enforcement of those provisions.  On March 10, the State announced that it would not appeal the Court's ruling.

Now before the Court is Wisconsin Petroleum Marketers & Convenience Store Association's ("WPMCA") post-judgment motion to intervene.  WPMCA moves to intervene for three purposes.  First, WPMCA filed a conditional motion to reconsider the Court's final judgment and permanent injunction.  Second, WPMCA filed a conditional motion to stay the Court's judgment pending appeal.  Third, WPMCA hopes to pursue a direct appeal of the Court's judgment.

WPMCA lacks a sufficient interest in the outcome of this case to allow intervention. WPMCA's post-judgment application is also untimely.  Therefore, WPMCA's motion to intervene is denied in its entirety.

**I.     WPMCA**

WPMCA is an organization consisting of approximately 500 independent businesses. As a group, WPMCA members employ more than 10,000 people, operate more than 2,000 stations and stores and account for more than one-half the entire volume of motor fuel sold in Wisconsin. In addition to convenience stores, truck stops and service stations, WPMCA

members own and operate related businesses such as rapid oil change facilities, car washes and card lock fueling outlets.

WPMCA claims that without the threat of enforcement of the Act, predatory pricing will result in lost profits and possibly force many of its members out of business. According to WPMCA president Matthew Hauser ("Hauser"), a "significant number of WPMCA's members do not have the ability that a fully integrated retailer has to offer cost or below-cost prices for the sale of motor vehicle fuel, nor can these WPMCA members realistically compete with retailers who can use lower prices as a loss leader to attract sales to large retail store operations, or other ventures."

## II. Intervention as of right

WPMCA moves to intervene as of right. *See* Fed. R. Civ. P. 24(a)(2). In the absence of a statutory right to intervene, a proposed intervenor must claim "an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(a)(2); *see also Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003). This language boils down to three basic requirements: interest, impairment, and inadequate representation.

### A. Interest

"The 'interest' required by Rule 24(a)(2) has never been defined with particular precision." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). The baseline requirement is that the interest must be a "direct, significant, legally

-3-

protectable" one. *American Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989). It is "something more than a mere 'betting' interest, but less than a property right." *Schipporeit*, 69 F.3d at 1380-81 (internal citations omitted). For example, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting the fund." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

To establish their interest in this lawsuit, WPMCA submitted declarations from various members who are "concerned that without this law, we may and probably will see predatory pricing of motor vehicle fuels by new competitors that will use this method to eliminate competition." D. 52-5, Declaration of Randy Meffert, ¶ 3. Some WPMCA members are unsure whether their businesses are "strong enough to stay in business and compete effectively during the time the order granting the injunction is considered on appeal." D. 52-7, Declaration of Linda Kaplan, ¶ 12. Others note that predatory pricing has already started in the wake of the Court's decision. *See, e.g.,* D. 52-8, Declaration of Denise Thomas, ¶ 4 ("I am concerned that the ability of Renew, and other similarly situated operators, to offer discounted prices will result in my Mobil stations incurring significant loss of sales").

An "economic interest that might be adversely affected by the outcome of the case alone is insufficient to warrant intervention under Rule 24(a)(2)." *NBD Bank, N.A. v. Bennett*, 159 F.R.D. 505, 506 (S.D. Ind. 1994) (quoting *Getty Oil Co. v. Department of Energy*, 865 F.2d 270, 276 (Tem. Em. Ct. App. 1988)). By "requiring that the applicant's

interest be . . . 'legally protectable,' it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *United States v. South Fla. Water Mgt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (emphasis in original); *see also Mountain Top*, 72 F.3d at 366 ("[i]n general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene").[1]

WPMCA members are concerned that other gasoline retailers will use predatory pricing to steal business from them. This economic interest in the future loss of business is contingent on the hypothetical actions of third parties. In fact, it is contingent on market forces beyond those that are influenced by the Court's injunction. If the loss of business did occur, inefficient business practices would theoretically be as much to blame as would the use of loss leaders by third parties. WPMCA members are also protected by federal antitrust law which prohibits predatory pricing. *See, e.g., Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 343-44 (8th Cir. 1995) (describing the contours of a predatory pricing claim for gasoline retailers under the Sherman Act [15 U.S.C. § 2] and the Robinson-Patman Act [15 U.S.C. § 13(a)]). WPMCA's speculative interest in the outcome of this lawsuit is not enough to establish a legally protectable interest for mandatory intervention. *See, e.g., Standard Heating and Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998) (interests asserted by proposed intervenors are "too speculative to be 'direct, substantial and

---

[1] WPMCA cites *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008) for the proposition that "an economic interest is by itself enough to allow a trade association to intervene." *Baude* contains no discussion of the interest required for mandatory intervention under Rule 24(a)(2). Judge Easterbrook merely mentioned in passing that a trade association "intervened to protect its economic interest." *Id.* at 612.

-5-

legally protectable'" because a "sequence of events would have to occur for the interests of the associations to be impacted by a successful challenge to the rules"); *Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (interest based on double contingency is not sufficiently direct or substantial); *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (contingent financial interest in subject of action was too attenuated to justify intervention).

Even to the extent that WPMCA members are currently losing sales or are likely to lose sales in the near future because competitors are allowed to charge lower prices, WPMCA's interest in this lawsuit is still insufficient to allow intervention. "A claim based only on an indirect economic effect of some action is rarely considered the same as a protectable right or interest sufficient to justify intervention." MOORE'S FED. PRACTICE 3D 24.03[2][b]; *see also American Maritime Transport, Inc. v. United States*, 15 Cl. Ct. 29, 30 (Cl. Ct. 1988) (applicants "have alleged nothing more than an indirect and contingent economic interest in this suit based upon the possibility of increased competition"); *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999) ("economic interest in upholding the current fee system simply does not rise to the level of a legally protectable interest necessary for mandatory intervention"). While the Court is "mindful that its decision in the underlying lawsuit may have a significant effect on petitioners' members' livelihoods,

they are not entitled to intervention as of right based on this economic interest." *NBD Bank*, 159 F.R.D. at 507.[2]

**B.      Timeliness**

Even if WPMCA had an interest sufficient to support intervention as of right, its motion to intervene is untimely. *See* Rule 24(a).  Courts generally apply a four-factor test to determine whether an application to intervene is timely: (1) the length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); *see also Heartwood*, 316 F.3d at 701.

An attempt to intervene "after final judgment is ordinarily looked upon with a jaundiced eye." *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1072 (5th Cir. 1970).  "The rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the

---

[2] Because WPMCA does not have a an interest sufficient to allow intervention as of right, it is unnecessary to consider whether WPMCA has standing to intervene in this case. "Some disagreement remains among the circuits about how Article III standing rules intersect with the requirements for Rule 24 intervention. . . . From a pragmatic standpoint, this court has observed that '[a]ny interest of such magnitude [as to support Rule 24(a) intervention of right] is sufficient to satisfy the Article III standing requirement as well.'" *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) (internal citations omitted).

-7-

litigation or (2) substantially interfere with the orderly processes of the court." *Id.* However, the Fifth Circuit later clarified that there are no "absolute measures of timeliness." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). "'[W]hether the request for intervention came before or after the entry of judgment [is] of limited significance,' . . . intervention could be allowed post-judgment provided that the rights of existing parties were not prejudiced and intervention did not interfere with the orderly processes of the court." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Stallworth*, 558 F.2d at 266).

### 1. Awareness of interest

There can be no doubt that WPMCA was aware of the instant litigation from the very outset of the case. WPMCA does not argue to the contrary. Rather, WPMCA argues that it simply never thought that Flying J would be victorious. The Court finds this hard to believe, especially in light of Judge Callahan's ruling that preceded this lawsuit. *See Lotus Business Group LLC v. Flying J, Inc.*, 532 F. Supp. 2d 1011 (E.D. Wis. 2007). WPMCA feigns surprise because the Act withstood numerous constitutional challenges in the past, but the Act never withstood the challenge brought against it by Flying J in this case and in *Lotus Business Group*. Even if WPMCA's surprise were justified, "a failure of imagination is not germane to the law governing intervention." *Staley v. Harris County, Tex.*, 223 F.R.D. 458, 462 (S.D. Tex. 2004).

Of course, this discussion slightly misstates the relevant inquiry – namely, the length of time WPMCA knew or reasonably should have known that its interests were jeopardized by the instant lawsuit. "A prospective intervenor must move promptly to intervene as soon

-8-

as it knows or has reason to know that its interests *might* be adversely affected by the outcome of the litigation." *Heartwood*, 316 F.3d at 701. WPMCA takes particular issue with the nature and scope of the injunction entered by the Court. Once again, this argument rings hollow because WPMCA was actively monitoring this litigation. Therefore, WPMCA was aware that the State of Wisconsin could be enjoined from enforcing the Act when this lawsuit was filed. It should have intervened earlier if it was so concerned that an injunction could be entered.

### 2. Prejudice to Flying J

Prejudice to existing parties is the "most important consideration" in determining the timeliness of an application for intervention. *See Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994). "This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996); *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 176 (7th Cir. 1995). In other words, the only relevant prejudice is that which "would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action." *Schultz v. Connery*, 863 F.2d 551, 554 (7th Cir. 1988) (quoting *Stallworth*, 558 F.2d at 265).

WPMCA argues that there would be no prejudice to Flying J because the State itself could have appealed and moved for reconsideration and to stay the judgment pending appeal. However, this argument conveniently ignores that WPMCA seeks to inject additional

-9-

evidence and arguments that were not presented by the State in the original litigation of this matter. As discussed above, WPMCA offers numerous declarations from its members regarding the irreparable harm they will allegedly suffer if the Court's injunction is not reversed or stayed pending an appeal. *See* D. 52. WPMCA also provides extensive evidence regarding the mechanics of the minimum markup law as it relates to gasoline in support of its motion for reconsideration. *See* D. 53, 55. Finally, WPMCA argues that the State (and Flying J) failed to cite supposedly controlling Seventh Circuit law in the course of summary judgment briefing.[3]

Therefore, the prejudice to Flying J is not simply the result of the fact that it would have to defend against these motions. WPMCA's proposed intervention is prejudicial because Flying J would be forced to defend against arguments and evidence that it is seeing for the very first time *after* the Court entered its final judgment. For whatever reason, WPMCA waited until now to intervene and to bring this evidence before the Court and Flying J. Assuming that WPMCA's interest was sufficient to intervene as of right (which it wasn't), the foregoing evidence should have been presented much earlier in the normal course of this litigation. *See, e.g., People Who Care*, 68 F.3d at 176 (proposed intervenor "is correct that prejudice resulting from delay is the operative issue. However, the prejudice here *does* result from delay") (emphasis in original) (internal citations omitted).

---

[3] *See Fuchs v. Rural Electric Convenience Cooperative*, 848 F.2d 1210 (7th Cir. 1988). The Court does not agree that *Fuchs* is controlling.

-10-

WPMCA's untimely, post-judgment attempt to intervene and completely shift the focus of this lawsuit is prejudicial to Flying J. *See Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal"); *see also Sierra Club*, 18 F.3d at 1206 n.3 (intervenor must "accept the proceedings as he finds them" and "has no right to relitigate issues already decided"); *Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d at 97 (intervenors must take the pleadings in a case as they find them).

### 3. Prejudice to WPMCA; Unusual Circumstances

WPMCA argues that it will be prejudiced because of the ongoing irreparable harm caused by the Court's injunction. Even taking WPMCA's claims of prejudice at face value, the lateness of WPMCA's request to intervene combined with the prejudice to Flying J outweigh the potential prejudice to WPMCA. "Neither the Federal Rules of Civil Procedure nor the law of equity rewards those who slumber on their rights . . ." *Staley*, 223 F.R.D. at 463.

Moreover, as noted above, WPMCA made a strategic decision to rely upon the State's defense of the Act. When the "representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Ligas v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007). WPMCA even participated behind the scenes and made suggestions on how to attack the arguments presented by Flying J's motion papers. *See, e.g.,* D. 59, Ex. H (17-page advocacy memorandum describing what

-11-

WPMCA "believe[s] to be the problems and weaknesses underlying Flying J's arguments"). Finally, WPMCA affirmatively applauded the State's efforts after the conclusion of this litigation. *See, e.g.,* D. 59, Ex. J ("We appreciate your efforts to defend the constitutionality of this long-standing Wisconsin law as well as the unique role you hold as Attorney General and the defender of state law"). Under these circumstances, WPMCA's interests were adequately represented by the State, and it cannot now complain about the effects of the Court's judgment.

### III. Permissive intervention

Permissive intervention is allowed when the application is timely and the applicant "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b). In exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3). The Court considers "any prejudice that the existing parties may incur if intervention is allowed," not the prejudice resulting from the delay in requesting intervention. *See South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) (the "principal consideration" in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights); *see also Stallworth*, 558 F.2d at 265 (noting the distinction between prejudice for purposes of permissive intervention and prejudice in the timeliness inquiry).

As discussed above, WPMCA's post-judgment motion to intervene is in many respects untimely. However, post-judgment intervention is normally allowed when the

existing parties indicate that they will not pursue an appeal. *See, e.g., Ross*, 426 F.3d at 755 (a "common example of post-judgment intervention that satisfies [the timeliness] criteria is intervention for purposes of appealing a decision that the existing parties to a suit have decided not to pursue") (citing *United States v. McDonald*, 432 U.S. 385, 395-96 (1977)). In these circumstances, "a post-judgment motion to intervene in order to prosecute an appeal is timely (if filed within the time period for appeal) because 'the potential inadequacy of representation came into existence only at the appellate stage.'" *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

If this theory of timeliness applies to an application for permissive intervention, WPMCA's post-judgment motion to intervene for purposes of pursuing an appeal could be considered timely. However, the Court will not allow permissive intervention because it would result in an appeal that is otherwise not forthcoming. Therefore, permissive intervention would cause further delay in the adjudication of Flying J's rights. *See, e.g., Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999) (relevant factor militating against addition of intervenors was need to expedite resolution of case); *United States v. 36.96 Acres of Land*, 754 F.2d 855, 860 (7th Cir. 1985) (intervention properly denied to avoid prolonging an already lengthy lawsuit). Flying J is also subject to heightened prejudice because it already shouldered the burden of two lawsuits which litigated essentially the same issues pertaining to the constitutionality of the Act. *See, e.g., United States v. Texas Educ. Agency (Lubbock Independent Sch. Dist.)*, 138 F.R.D. 503,

518 (N.D. Tex. 1991) (denying intervention where it would require party to incur additional legal fees).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** WPMCA's motion to intervene [D. 52] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2009.

                                                  **SO ORDERED,**

                                              *s/ Rudolph T. Randa*
                                              **HON. RUDOLPH T. RANDA**
                                              **Chief Judge**